**VARDA, INC., Plaintiff–Appellee,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant–Appellant.**

No. 579, Docket 94–7405.

United States Court of Appeals,
Second Circuit.

Argued Oct. 28, 1994.

Decided Jan. 13, 1995.

Robert M. Sullivan, New York City (Ira J. Greenhill, P.C., of counsel), for defendant-appellant.

Dennis T. D'Antonio, New York City (Debra Ruth Wolin, Weg & Meyers, P.C., of counsel), for plaintiff-appellee.

Before: VAN GRAAFEILAND, McLAUGHLIN, and LEVAL, Circuit Judges.

McLAUGHLIN, Circuit Judge:

The Insurance Company of North America ("INA") issued a casualty insurance policy to Varda, Inc. ("Varda"), a clothing and shoe store. The policy required Varda to submit sworn proofs of loss after filing a claim with INA. When one of its stores was burglarized, Varda filed a notice of claim, but no proof of loss. INA undertook an investigation.

Almost a year later, Varda sued INA in the United States District Court for the Southern District of New York (John E.

Sprizzo, *Judge*) for failure to pay the insurance. INA, for the first time, requested proofs of loss, but Varda did not submit them. INA filed an answer, asserting a number of defenses, including Varda's failure to submit sworn proofs of loss. The case went to trial (after being reassigned to Lawrence M. McKenna, *Judge*). The jury found for Varda, and awarded $110,833.03 in damages. The district court added $82,478.92 in pre-judgment interest.

INA now appeals, arguing that the district court erroneously charged the jury that if INA had repudiated the policy, this excused Varda's non-compliance with various provisions of the policy. INA's position is that, as a matter of law, there was no repudiation. INA also contends that the district court erroneously dismissed two of INA's affirmative defenses. Finally, INA claims that the insurance policy precludes the award of pre-judgment interest.

We hold that: (1) because INA did not renew its pre-verdict motion for judgment as a matter of law, we cannot now set aside the verdict; (2) the district court properly dismissed INA's affirmative defenses; and (3) the policy does not preclude pre-judgment interest. In addition, we deny Varda its costs on appeal, because its counsel blatantly evaded this Court's page limit on briefs by the massive abuse of textual footnotes.

## BACKGROUND

INA insured Varda against losses from burglaries. The insurance policy required Varda to submit proofs of loss after filing a claim. (Under New York law, however, failure to submit proofs of loss is not a material breach unless and until the insured receives and ignores a written demand for the proofs of loss. N.Y.Ins.Law § 3407(a) (McKinney 1985).) The policy also required Varda to sign the transcript of any examination under oath ("EUO") INA conducted.

One of Varda's stores was burglarized on October 23, 1984. Varda filed a notice of claim, but no proof of loss; and INA began an investigation. Cooperating with INA, Varda conducted an extensive post-loss inventory and compared that inventory with its pre-loss records.

Although it pored through Varda's books, INA made no independent effort to determine whether any of the supposedly stolen inventory remained in the store. Moreover, INA's claims adjuster, Robert Dwyer, informed Varda that it had no provable loss and told INA that Varda's claim was "ludicrous." Nevertheless, even after almost a year, INA still had not told Varda whether it would pay the claim.

Fearing that INA would deny the claim, and having been cautioned by its own adjuster that the policy's one-year period to sue INA was running out, Varda brought a diversity suit against INA for failing to pay the insurance. After being sued, INA then requested, for the first time, that Varda submit sworn proofs of loss. (Varda had sixty days to do so after INA's request. *See* N.Y.Ins. Law § 3407(a).) INA also asked Varda's principal, Ezra Omri, to appear for an EUO. Omri appeared at the EUO, but failed to produce sworn proofs of loss. He later signed the transcript of the EUO, but did not return it to INA.

INA made no additional request for either the proofs of loss or the EUO transcript. Instead, it filed its answer several days after the statutory sixty-day period for submitting the proofs of loss expired. In the answer, INA admitted there was an insurance contract between the parties, but little else. It also asserted several affirmative defenses, including failure to file proofs of loss, fraud, and failure to sign and return EUO transcripts.

INA then moved for summary judgment on the proof of loss defense, arguing that Varda's failure to submit proofs of loss was a material breach of the insurance contract. Varda opposed the motion, arguing that: (1) INA had waived the proof of loss requirement because it never sent Varda the policy language that contained the proof of loss requirement; and, alternatively, (2) INA had already repudiated the insurance policy before it requested proofs of loss from Varda.

The district court denied INA's motion. It held that whether Varda received the proof

of loss clause was a question of fact. *Varda, Inc. v. Insurance Co. of North America*, 701 F.Supp. 57, 60 (S.D.N.Y.1988). It also held that if Varda had not received the proof of loss provision, the jury could find that INA had waived (or was estopped from asserting) the proof of loss defense. *Id.* at 59. Finally, it held that neither INA's delay in investigating Varda's claim nor its adjuster's comment to INA that the claim was ludicrous amounted to a repudiation of the policy. *Id.* at 61.

The case was reassigned to Judge McKenna, and went to trial. Omri (Varda's principal) testified about the burglary, how he calculated Varda's loss, and his efforts to get INA to process Varda's claim. He also testified that INA's claims adjuster, Dwyer, never showed up to investigate the Varda store until January 16, 1985, almost three months after the loss.

Dwyer testified for INA. He admitted that there had indeed been a burglary, but he recalled little of his investigation (it took place over nine years before). Contrary to Omri, he claimed that he met with Varda's claims adjuster at the store on October 31, 1984. (On cross-examination, however, he admitted that his written report of that "meeting" contained no photographs of the store nor any statement from the insured, even though he agreed that adjusters usually obtain such information as soon as possible.) He referred to the January 16, 1985 meeting as his "second" visit to the site. His own records revealed, however, that he visited the site to take photographs on November 8, 1984, which would make the January meeting the third site visit—if Dwyer was telling the truth about the October 31, 1984 meeting.

At the close of the case, INA moved for judgment as a matter of law. Varda countered with a motion to dismiss INA's fraud and EUO transcript defenses. The district court denied INA's motion, and granted Varda's.

After reviewing a proposed jury charge on repudiation, INA renewed its motion for judgment as a matter of law. In addition to the grounds raised earlier, INA now argued that it had not repudiated the policy. The district court again denied the motion. It charged the jury, over INA's objection, that Varda was not obliged to comply with INA's request for proofs of loss if the jury found that INA had already formed a definitive intent to deny Varda's claim.

The jury returned a general verdict for Varda, awarding it $110,833.03 in damages. Varda moved for pre-judgment interest. The district court granted the motion, tacking on $82,478.92. INA neither renewed its motion for judgment as a matter of law, nor moved for a new trial.

INA now appeals. Both parties concede that New York law governs.

## DISCUSSION

Notwithstanding the flurry of issues raised by INA on appeal, we need address only three questions: (1) whether the district court erred by instructing the jury that Varda would be excused from failing to comply with the proof of loss provision if the jury found that INA had repudiated the policy; (2) whether INA has any affirmative defenses to Varda's claim of breach of contract; and (3) whether the insurance contract bars the award of pre-judgment interest.

### I. *Repudiation*

There is no question that Varda failed to file proofs of loss, even after INA's written request for them. Under New York law, this failure is a material breach of contract, and, if unexcused, precludes recovery under the contract. *See* N.Y.Ins.Law § 3407(a) (McKinney 1985); *Anthony Marino Constr. Corp. v. INA Underwriters Ins. Co.*, 69 N.Y.2d 798, 800, 513 N.Y.S.2d 379, 505 N.E.2d 944 (1987). If, however, INA had repudiated the claim *before* it demanded sworn proofs of loss, Varda's failure to submit the proofs is excused. *See Igbara Realty Corp. v. New York Property Ins. Underwriting Ass'n*, 63 N.Y.2d 201, 217, 481 N.Y.S.2d 60, 66, 470 N.E.2d 858, 864 (1984). INA argues that, because, as a matter of law, there was no repudiation, the district court should never have sent that issue to the jury. We cannot reach this issue, however, because INA failed to preserve it.

In retrospect, it has now become clear that the core issue both at trial and on this appeal is the repudiation question. If INA repudiated its liability under the insurance policy, it loses. If it did not repudiate, then Varda loses because it never filed the required proof of loss. Despite the centrality of this issue, it was treated cavalierly in the trial court and badly muddled in the appellate briefs.

At the charging conference, Judge McKenna informed the parties that he would charge the jury on the repudiation issue and indicated what he intended to say. INA objected to the charge, not because it was substantively incorrect, but because INA believed there was insufficient evidence to carry that issue to the jury. Lest the trial judge miss the point, INA coupled its objection with a motion for judgment as a matter of law under Rule 50. Properly analyzed, then, this is an appeal from the denial of a Rule 50 motion.

 To preserve for appeal a challenge to the denial of a pre-verdict motion for judgment as a matter of law, a movant must renew that motion after the verdict. Fed. R.Civ.P. 50(b); see Johnson v. New York, New Haven & Hartford R.R., 344 U.S. 48, 50, 73 S.Ct. 125, 127, 97 L.Ed. 77 (1952); Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 214–18, 67 S.Ct. 752, 754–56, 91 L.Ed. 849 (1947); Borger v. Yamaha Int'l Corp., 625 F.2d 390, 394–95 (2d Cir.1980). INA did not renew its motion for judgment as a matter of law. Indeed, it did not even file a Rule 59(a) motion for a new trial.

Accordingly, INA has waived its challenge to the denial of its motion for judgment as a matter of law based on the insufficiency of the evidence. See Cone, 330 U.S. at 218, 67 S.Ct. at 756 ("In the absence of such a motion, . . . the appellate court [is] without power to direct the District Court to enter a judgment contrary to the one it had permitted to stand."); Borger, 625 F.2d at 395 ("A judgment n.o.v. motion is not a useless formality[;]" without one, an appellate court cannot pass on the weight of the evidence.).

INA contends that Judge McKenna excused it from renewing its motion after the verdict because he said at the charge conference that he regarded INA's positions "as

part of the record preserved for appeal." Putting aside the question of a district court's power, if any, to excuse a rule of procedure that affects this Court's jurisdiction, see Borger, 625 F.2d at 395, INA ignores the context of Judge McKenna's remark.

Near the end of the charging conference (which had begun on the preceding day and had been interrupted by a blizzard), Varda's counsel had a few minor questions. Before asking them, he sought assurance that he was not waiving any earlier objections:

> So the record is clear, I am not waiving any other applications I have made previously with respect to the charge by now limiting it to these items, and I take it, your Honor, all of our prior discussions were in the context of the charge conferences, so any issues I would need to raise for the appeal, if raised during that discussion, I need not go through again.

(Joint Appendix at 874). Judge McKenna graciously responded:

> Everything both sides said is part of the record. I don't think we are quite as formal as in state court about objections. Your positions were enunciated yesterday and I regard them as part of the record preserved for appeal.

(Id.) This exchange established only that the attorneys need not repeat positions asserted the previous day about the jury charges. It did not excuse the requirements of Rule 50(b) for renewing a motion for judgment as a matter of law.

 Although we have, on occasion, ordered "a new trial to prevent a manifest injustice" in cases "[w]here a jury's verdict is wholly without legal support," Sojak v. Hudson Waterways Corp., 590 F.2d 53, 54 (2d Cir.1978) (per curiam), we see no manifest injustice here. To establish repudiation, Varda had to show that INA distinctly, unequivocally, and absolutely refused to perform its obligations under the policy. Rhodes, Couch on Insurance 2d at § 74:279 (rev. ed. 1983); see Aryeh v. Westchester Fire Ins. Co., 138 A.D.2d 337, 338, 525 N.Y.S.2d 628, 629 (2d Dep't), appeal denied, 73 N.Y.2d 703, 537 N.Y.S.2d 491, 534 N.E.2d

329 (1988). While a delay in investigating or resolving a claim will not, by itself, support a finding of repudiation, *see Lentini Bros. Moving & Storage Co. v. New York Property Ins. Underwriting Ass'n*, 76 A.D.2d 759, 761, 428 N.Y.S.2d 684, 685–87 (1st Dep't 1980) (dismissing insured's suit, in part because evidence of delay alone created no material dispute of fact concerning repudiation), *aff'd*, 53 N.Y.2d 835, 440 N.Y.S.2d 174, 422 N.E.2d 819 (1981), there was more here than mere delay. INA's own adjuster, Dwyer, doubted the veracity of the claim, and told INA officials that the claim was ludicrous. Although Dwyer may not have had the legal authority to deny Varda's claim, surely INA attached considerable weight to his recommendation. In addition, Varda's cross-examination of Dwyer suggested that Dwyer lied about the date his investigation began. The evidence thus supported an inference that INA was not conducting its investigation in good faith, and that it intended to deny the claim. While this was not overwhelming proof of repudiation, we cannot say that the "jury's verdict [wa]s wholly without legal support." *Sojak*, 590 F.2d at 54.

INA also contends that the repudiation issue had already been definitively resolved by the district court before trial, and, thus, could not be relitigated at the trial. INA had moved for summary judgment. Opposing the motion, Varda contended that INA had repudiated Varda's claim. The district court was unimpressed by Varda's evidence of repudiation. *Varda, Inc.*, 701 F.Supp. at 61. INA interprets this ruling to preclude the trial court from submitting the repudiation issue to the jury, but this overstates the effect of the pre-trial ruling.

INA forgets that its motion for summary judgment was denied. Varda raised repudiation simply as a defense to INA's motion for summary judgment. The district court deprecated that defense because it "lack[ed] merit on the facts presented" by Varda in opposition to INA's motion for summary judgment. *Id.* Thus, rather than being barred from raising repudiation at trial, Varda was merely put on notice that it would have to proffer additional evidence if it wanted to get to the jury on the repudiation

defense. It heeded the court's admonition and did produce additional evidence at trial.

## II. *Affirmative Defenses*

INA argues that the district court erred by dismissing its defenses of (1) fraud and (2) failure to sign and return EUO transcripts.

### A. *Fraud*

INA contends that the fraud issue should have gone to the jury. We disagree.

■ To establish the affirmative defense of fraud, the insurer must show that the insured intentionally made material misrepresentations to the insurer. *Kaffalos, Inc. v. Excelsior Ins. Co.*, 105 A.D.2d 957, 958, 482 N.Y.S.2d 96, 98 (3d Dep't 1984); *see also Saks & Co. v. Continental Ins. Co.*, 23 N.Y.2d 161, 164–65, 295 N.Y.S.2d 668, 671, 242 N.E.2d 833, 835 (1968) (entire policy void if insured has willfully concealed or misrepresented any material fact). The insurer must prove fraud by clear and convincing evidence. *See Ausch v. St. Paul Fire & Marine Ins. Co.*, 125 A.D.2d 43, 44, 511 N.Y.S.2d 919, 922 (2d Dep't), *appeal denied*, 70 N.Y.2d 610, 522 N.Y.S.2d 110, 516 N.E.2d 1223 (1987).

■ INA's adjuster conceded that Varda's shop was burglarized. But INA claimed that Varda had inflated the loss estimates. INA introduced no direct evidence (and little more than innuendo) that Varda had padded its loss. Instead, INA, which carried the burden of proof on the fraud issue, was satisfied to label as "patently incredible" Varda's written statement describing the burglary. Moreover, there is no evidence of Varda's intent to defraud, "a necessary element of the defense." *Deitsch Textiles, Inc. v. New York Property Ins. Underwriting Ass'n*, 62 N.Y.2d 999, 1001, 479 N.Y.S.2d 487, 488, 468 N.E.2d 669, 670 (1984). No reasonable jury could find fraud on so sparse a record, and the court properly took that issue away from the jury.

### B. *Failure to Return Signed Transcripts*

INA argues that the policy required Varda to sign *and* return transcripts from examinations under oath. We can find no such obligation in the insurance policy.

**640**

██ Courts resolve ambiguities in an insurance policy in the insured's favor. *See, e.g., Cantanucci v. Reliance Ins. Co.*, 43 A.D.2d 622, 623, 349 N.Y.S.2d 187, 191 (3d Dep't 1973), *aff'd* 35 N.Y.2d 890, 364 N.Y.S.2d 890, 324 N.E.2d 360 (1974). The policy here required Varda, upon request, to "submit to an examination under oath and sign a copy of the examination." The policy is silent or ambiguous, at best, about whether Varda had to *return* any EUO transcript it signed. It certainly does not expressly require Varda to return the transcript.

We realize, of course, that a signed transcript is of little value to INA if Varda keeps it. The policy's fuzzy language, however, coupled with INA's failure to demand that Varda return the signed transcript and Varda's cooperation during earlier parts of INA's investigation, persuades us that Varda's failure to return the signed transcript did not warrant the drastic remedy of dismissing Varda's suit. *Cf. Pogo Holding Corp. v. New York Property Ins. Underwriting Ass'n*, 73 A.D.2d 605, 606, 422 N.Y.S.2d 123, 124 (2d Dep't 1979) (insured failed to sign and return an EUO transcript, although the insurer requested it; rather than have its complaint dismissed outright, the insured could cure the breach of contract).

Accordingly, we affirm the dismissal of the fraud and transcript affirmative defenses.

### III. Pre-judgment Interest

INA maintains that, even if it is liable under the policy, its terms preclude the award of pre-judgment interest. Again, we find the policy ambiguous.

██ An insurance company must normally pay pre-judgment interest when it breaches an insurance contract. *See United States Fire Ins. Co. v. Federal Ins. Co.*, 858 F.2d 882, 887–89 (2d Cir.1988) (interpreting N.Y.Civ.Prac.L. & R. § 5001(a)), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1744, 104 L.Ed.2d 181 (1989); *see also L. Smirlock Realty Corp. v. Title Guarantee Co.*, 63 N.Y.2d 955, 958, 483 N.Y.S.2d 984, 985, 473 N.E.2d 234, 235 (1984) (awarding insured in a claim concerning a title defect interest from date title policy was issued). In New York, "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed." N.Y.Civ.Prac.L. & R. § 5001(b) (McKinney 1992).

██ INA focuses on the policy's provision requiring INA to pay Varda's claim within thirty days after: (1) INA reaches an agreement with Varda; (2) "the filing of an appraisal award"; or (3) "the entry of a final court judgment." Contending that under this provision, interest does not accrue until thirty days after the entry of final judgment, INA believes that this provision trumps New York law.

We reject this construction of the policy. The provision does not even mention pre-judgment interest. It merely establishes the time when INA must pay Varda's claim. It does not address the question of how the amount of the claim is to be calculated. Construing the ambiguity against INA, as we must, *see, e.g., Cantanucci*, 43 A.D.2d at 623, 349 N.Y.S.2d at 190–91, we find that the district court did not err in awarding pre-judgment interest to Varda.

### IV. Costs

██ Costs on appeal are routinely awarded to a successful party, "unless otherwise ordered." Fed.R.App.P. 39(a). Varda's brief in this case is a textbook example of where it should be otherwise ordered.

There is a fifty-page limit on briefs in the Court of Appeals. Fed.R.App.P. 28(g). Under Local Rule 32, "footnotes may be single-spaced," while text must be double-spaced. Varda's fifty-page brief is pocked with fifty-eight footnotes, many over a page long and containing crucial parts of Varda's arguments. Indeed, approximately 75% of Varda's statement of facts and argument appear in footnotes. If Varda had presented its facts and argument in canonical form, i.e., in the text, its brief would have been roughly seventy pages. Varda thus brazenly used "textual footnotes to evade page limits." *Production & Maintenance Employees' Local 504 v. Roadmaster Corp.*, 954 F.2d 1397, 1407 (7th Cir.1992).

Although the denial of costs may sting, Varda's counsel are fortunate that they prac-

tice law in the late twentieth century. Four hundred years ago, an English court imprisoned the pleader of a 120–page replication. *Mylward v. Weldon,* (1596), *first reported in* 1 G. Spence, *Equitable Jurisdiction of the Court of Chancery* 375 n.*h* (Philadelphia, Lea & Blanchard 1846). In addition, it ordered a warden to:

> cut a hole in the midst of the same engrossed Replication ... and put the said [pleader's] head through the same hole, and so let the same Replication hang about his shoulder with the written side outward.

*Id.* The warden was then to:

> lead the said [pleader] bareheaded and barefaced round about Westminster Hall, whilst the Courts are sitting, and ... show him at the Bar of every of the three Courts within the Hall.

*Id.*

Varda's brief stirs nostalgia for the rigors of the common law.

### CONCLUSION

We have carefully reviewed INA's other arguments, and conclude that they lack merit. The judgment of the district court is affirmed, and costs to Varda are denied.